TRACY L. WILKISON
United States Attorney
JERRY C. YANG
Chief, Riverside Branch Office
RUBEN ESCALANTE (Cal. Bar No. 244596)
Assistant United States Attorneys
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, CA 92501
    Telephone: (951) 276-6212
    Facsimile: (951) 276-6202
    E-mail:    ruben.escalante@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>FRANCISCO SANCHEZ MARTINEZ,<br>FERNANDEO JIMENEZ MANRIQUEZ,<br>LUIS FERNANDDO BEJARANO BENITEZ,<br>JESUS AYALA LOPEZ, and<br>JOSE PASTOR MEJIA SANCHEZ,<br><br>    Defendants. | ED CR No. 20-00153-JAK-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>FRANCISCO SANCHEZ MARTINEZ |

1.    This constitutes the plea agreement between FRANCISCO SANCHEZ MARTINEZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

first superseding indictment in <u>United States v. FRANCISCO SANCHEZ</u>
<u>MARTINEZ, et al.</u>, ED CR No. 20-00153-JAK, which charges defendant
with Conspiracy to Manufacture, Distribute, and Possess with Intent
to Distribute and Manufacture Marijuana in violation of 21 U.S.C.
§§ 846, 841(a)(1), (b)(1)(A)(vii).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained
in this agreement.

d.   Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

e.   Not commit any crime or any act constituting
obstruction of justice; however, offenses that would be excluded for
sentencing purposes under United States Sentencing Guidelines
("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the
scope of this agreement.

f.   Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the
time of sentencing unless defendant has demonstrated a lack of
ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt
ordered by the Court will be due in full and immediately.  The
government is not precluded from pursuing, in excess of any payment
schedule set by the Court, any and all available remedies by which to
satisfy defendant's payment of the full financial obligation,
including referral to the Treasury Offset Program.

1        i.    Complete the Financial Disclosure Statement on a form

2 provided by the USAO and, within 30 days of defendant's entry of a

3 guilty plea, deliver the signed and dated statement, along with all

4 of the documents requested therein, to the USAO by either email at

5 usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6 Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

7 Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

8 criminal debt shall be assessed based on the completed Financial

9 Disclosure Statement and all required supporting documents, as well

10 as other relevant information relating to ability to pay.

11        j.    Authorize the USAO to obtain a credit report upon

12 returning a signed copy of this plea agreement.

13        k.    Consent to the USAO inspecting and copying all of

14 defendant's financial documents and financial information held by the

15 United States Probation and Pretrial Services Office.

16    3.    Defendant further agrees:

17        a.    To forfeit all right, title, and interest in and to

18 any and all monies, properties, and/or assets of any kind, derived

19 from or acquired as a result of, or used to facilitate the commission

20 of, or involved in the illegal activity to which defendant is

21 pleading guilty, specifically including, but not limited to, the

22 following:

23        i.    One FÉG (FÉGARMY Arms Factory of Hungary), model

24 PA-63, 9mm caliber semi-automatic pistol, bearing serial number

25 AJ2888;

26        ii.   Sixty-nine rounds of GN3 Makarov 9mm caliber

27 ammunition; and

28

1        iii. $46,690 seized on August 12, 2020 (collectively,
2   the "Forfeitable Assets").

3        b.   To the Court's entry of an order of forfeiture at or
4   before sentencing with respect to the Forfeitable Assets and to the
5   forfeiture of the assets.

6        c.   To take whatever steps are necessary to pass to the
7   United States clear title to the Forfeitable Assets, including,
8   without limitation, the execution of a consent decree of forfeiture
9   and the completing of any other legal documents required for the
10  transfer of title to the United States.

11       d.   Not to contest any administrative forfeiture
12  proceedings or civil judicial proceedings commenced against the
13  Forfeitable Assets.  If defendant submitted a claim and/or petition
14  for remission for all or part of the Forfeitable Assets on behalf of
15  himself or any other individual or entity, defendant shall and hereby
16  does withdraw any such claims or petitions, and further agrees to
17  waive any right he may have to seek remission or mitigation of the
18  forfeiture of the Forfeitable Assets.

19       e.   Not to assist any other individual in any effort
20  falsely to contest the forfeiture of the Forfeitable Assets.

21       f.   Not to claim that reasonable cause to seize the
22  Forfeitable Assets was lacking.

23       g.   To prevent the transfer, sale, destruction, or loss of
24  any and all assets described above to the extent defendant has the
25  ability to do so.

26       h.   To fill out and deliver to the USAO a completed
27  financial statement listing defendant's assets on a form provided by
28  the USAO.

1            i.   That forfeiture of Forfeitable Assets shall not be
2    counted toward satisfaction of any special assessment, fine,
3    restitution, costs, or other penalty the Court may impose.

4            j.   To the abandonment to the United States of any
5    interest of the defendant in the following firearms and ammunition,
6    seized by law enforcement on or about August 14, 2021:

7                 i.   One FÉG (FÉGARMY Arms Factory of Hungary), model
8    PA-63, 9mm caliber semi-automatic pistol, bearing serial number
9    AJ2888;

10                ii.   Sixty-nine rounds of GN3 Makarov 9mm caliber
11   ammunition (the "Seized Firearms").

12           k.   To acknowledgement by defendant that he is the sole
13   owners of the Seized Firearms and that no other person or entity has
14   an interest in the seized firearms.

15           l.   To complete any legal documents (including, but not
16   limited to, an ATF Form 3400.1 – Abandonment) required for the
17   transfer of title of the Seized Firearms to the United States.

18           m.   With respect to any criminal forfeiture ordered as a
19   result of this plea agreement, defendant waives: (1) the requirements
20   of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding
21   notice of the forfeiture in the charging instrument, announcements of
22   the forfeiture sentencing, and incorporation of the forfeiture in the
23   judgment; (2) all constitutional and statutory challenges to the
24   forfeiture (including by direct appeal, habeas corpus or any other
25   means); and (3) all constitutional, legal, and equitable defenses to
26   the forfeiture of the Forfeitable Assets in any proceeding on any
27   grounds including, without limitation, that the forfeiture
28   constitutes an excessive fine or punishment.   Defendant acknowledges

1  that forfeiture of the Forfeitable Assets is part of the sentence
2  that may be imposed in this case and waives any failure by the Court
3  to advise defendant of this, pursuant to Federal Rule of Criminal
4  Procedure 11(b)(1)(J), at the time the Court accepts defendant's
5  guilty plea.

THE USAO'S OBLIGATIONS

7  　　　4.　　The USAO agrees to:

8  　　　　　a.　　Not contest facts agreed to in this agreement.

9  　　　　　b.　　Abide by all agreements regarding sentencing contained
10  in this agreement.

11  　　　　　c.　　At the time of sentencing, move to dismiss the
12  remaining counts of the indictment as against defendant.  Defendant
13  agrees, however, that at the time of sentencing the Court may
14  consider any dismissed charges in determining the applicable
15  Sentencing Guidelines range, the propriety and extent of any
16  departure from that range, and the sentence to be imposed.

17  　　　　　d.　　At the time of sentencing, provided that defendant
18  demonstrates an acceptance of responsibility for the offense up to
19  and including the time of sentencing, recommend a two-level reduction
20  in the applicable Sentencing Guidelines offense level, pursuant to
21  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
22  additional one-level reduction if available under that section.

23  　　　　　e.　　Recommend that defendant be sentenced to a term of
24  imprisonment no higher than the low end of the applicable Sentencing
25  Guidelines range, provided that it is equal to or greater than 120
26  months' imprisonment and the offense level used by the Court to
27  determine that range is 25 or higher and provided that the Court does
28  not depart downward in offense level or criminal history category.

6

1   If the low end of the applicable Sentencing Guidelines range is less

2   than 120 months' imprisonment, the government will recommend that

3   defendant be sentenced to a term of 120 months' imprisonment.  For

4   purposes of this agreement, the low end of the Sentencing Guidelines

5   range is that defined by the Sentencing Table in U.S.S.G. Chapter 5,

6   Part A.

7                    NATURE OF THE OFFENSE

8       5.   Defendant understands that for defendant to be guilty of

9   the crime charged in count one of the first superseding indictment,

10   that is, Conspiracy to Manufacture, Distribute, and Possess with

11   Intent to Distribute and Manufacture Marijuana in violation of 21

12   U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vii), the following must be true:

13       a.   First, there was an agreement between two or more

14   persons to manufacture, distribute, and possess with intent to

15   distribute and manufacture marijuana, and

16       b.   Second, the defendant joined in the agreement knowing

17   of its purpose and intending to help accomplish that purpose.

18       6.   Defendant understands that for defendant to be subject to

19   the statutory maximum and statutory minimum sentence set forth below,

20   the government must prove beyond a reasonable doubt that defendant

21   conspired to manufacture, distribute, and possess with intent to

22   distribute and manufacture at least 1,000 marijuana plants.

23   Defendant admits that defendant, in fact, conspired to manufacture,

24   distribute, and possess with intent to distribute and manufacture

25   2,944 marijuana plants.

26               PENALTIES AND RESTITUTION

27       7.   Defendant understands that the statutory maximum sentence

28   that the Court can impose for a violation of Title 21, United States

Code, Sections §§ 846, 841(a)(1), (b)(1)(A)(vii), is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Sections §§ 846, 841(a)(1), (b)(1)(A)(vii), is: 10 years' imprisonment, followed by a 5-year period of supervised release, and a mandatory special assessment of $100.

9.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution will be at least $1,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay

1   removal, removal is presumptively mandatory and a virtual certainty

2   in this case.  Defendant further understands that removal and

3   immigration consequences are the subject of a separate proceeding and

4   that no one, including his attorney or the Court, can predict to an

5   absolute certainty the effect of his conviction on his immigration

6   status.  Defendant nevertheless affirms that he wants to plead guilty

7   regardless of any immigration consequences that his plea may entail,

8   even if the consequence is automatic removal from the United States.

9   FACTUAL BASIS

10      13.  Defendant admits that defendant is, in fact, guilty of the

11   offense to which defendant is agreeing to plead guilty.  Defendant

12   and the USAO agree to the statement of facts provided below and agree

13   that this statement of facts is sufficient to support a plea of

14   guilty to the charge described in this agreement and to establish the

15   Sentencing Guidelines factors set forth in paragraph 15 below but is

16   not meant to be a complete recitation of all facts relevant to the

17   underlying criminal conduct or all facts known to either party that

18   relate to that conduct.

19      Beginning on an unknown date, and continuing until on or about

20   August 14, 2020, in Riverside and San Bernardino Counties, defendant

21   conspired with known and unknown conspirators (collectively, "co-

22   conspirators") to knowingly and intentionally manufacture,

23   distribute, and possess with intent to distribute and manufacture, at

24   least 1,000 marijuana plants.

25      As part of the conspiracy, one or more co-conspirators would

26   identify locations where marijuana could be clandestinely planted,

27   cultivated, and harvested within the Central District of California,

28   including upon federal forest lands.  One or more co-conspirators

1  would identify and purchase various strains of marijuana seeds for
2  planting within the clandestine cultivation sites.  One or more co-
3  conspirators would enter the clandestine cultivation sites for the
4  purpose of clearing native vegetation, diverting local waterways,
5  planting and cultivating the marijuana plants, and protecting the
6  marijuana plants from native insects and mammals.  Defendant would
7  provide logistical support for the marijuana cultivation sites,
8  including purchasing and delivering supplies to the cultivation
9  sites, and picking up harvested marijuana and transporting it from
10 the cultivation sites.  Co-conspirators would harvest and prepare the
11 marijuana for distribution and sale.  Defendant and co-conspirators
12 possessed a firearm and ammunition at one of the cultivation sites,
13 for the purpose of protecting the marijuana cultivation operation and
14 marijuana plants.  Defendant would possess marijuana seeds for use in
15 the marijuana cultivation operations.  Defendant and one or more co-
16 conspirators would distribute, and possess with intent to distribute,
17 including at defendant's residence, the marijuana cultivated and
18 harvested from the cultivation sites, to other co-conspirators.

19      In furtherance of the conspiracy, on or about May 15, 2020,
20 defendant and one or more co-conspirators delivered supplies to or
21 near a clandestine marijuana cultivation site in the Cleveland
22 National Forest ("Cleveland cultivation site").  On or about June 13,
23 2020, defendant and one or more co-conspirators delivered supplies to
24 a clandestine cultivation site in the San Bernardino National Forest
25 ("San Bernardino cultivation site").  On or about June 18, 2020,
26 defendant and one or more co-conspirators traveled to a WinCo Foods
27 grocery store, purchased groceries and other supplies, and delivered
28 those items to the Cleveland cultivation site.  On or about August 7,

2020, defendant and one or more co-conspirators transported harvested marijuana from the Cleveland cultivation site to be packaged for distribution and sale.  On or about August 12, 2020, defendant possessed processed marijuana at a residence in Nuevo, California.  On or about August 12, 2020, defendant possessed marijuana seeds at a residence in Menifee, California.  On or about August 13, 2020, co-conspirators processed harvested marijuana plants at the Cleveland cultivation site.  On or about August 13, 2020, co-conspirators possessed at least approximately 1,673 marijuana plants at the Cleveland cultivation site.  On or about August 14, 2020, co-conspirators processed harvested marijuana plants at the San Bernardino cultivation site.  On or about August 14, 2020, co-conspirators possessed at least approximately 1,271 marijuana plants at the San Bernardino cultivation site.  On or about August 14, 2020, defendant and co-conspirators, each aiding and abetting the other, knowingly possessed a FÉG (FÉGARMY Arms Factory of Hungary), model PA-63, 9mm caliber semi-automatic pistol, bearing serial number AJ2888, and 69 rounds of GN3 Makarov 9mm caliber ammunition, at the San Bernardino cultivation site, for the purpose of protecting the site and the marijuana plants and in connection with the conspiracy.  Defendant possessed the gun himself and induced others to do so in connection with the conspiracy.

On August 13, 2020, law enforcement raided the Cleveland cultivation site.  On August 14, 2020, law enforcement raided the San Bernardino cultivation site.  Co-conspirators were apprehended within the Cleveland cultivation site and San Bernardino cultivation site.  After being read their Miranda rights, the co-conspirators admitted to having been harvesting marijuana.

SENTENCING FACTORS

14.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crime of conviction.

15.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 24 | U.S.S.G. § 2D1.1(c)(8) |
| Possession of a dangerous weapon: | +2 | U.S.S.G. § 2D1.1(b)(2) |
| Maintenance of premises for manufacturing controlled substance | +2 | U.S.S.G. § 2D1.1(b)(12) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

16.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

18.   Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.   The right to confront and cross-examine witnesses against defendant.

    f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

19.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

20.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 120 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended

General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22.   The USAO agrees that, provided all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

23.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this

1  agreement and the filing commencing any such action; and

2  (ii) defendant waives and gives up all defenses based on the statute

3  of limitations, any claim of pre-indictment delay, or any speedy

4  trial claim with respect to any such action, except to the extent

5  that such defenses existed as of the date of defendant's signing this

6  agreement.

7  EFFECTIVE DATE OF AGREEMENT

8      24.  This agreement is effective upon signature and execution of

9  all required certifications by defendant, defendant's counsel, and an

10 Assistant United States Attorney.

11 BREACH OF AGREEMENT

12      25.  Defendant agrees that if defendant, at any time after the

13 signature of this agreement and execution of all required

14 certifications by defendant, defendant's counsel, and an Assistant

15 United States Attorney, knowingly violates or fails to perform any of

16 defendant's obligations under this agreement ("a breach"), the USAO

17 may declare this agreement breached.  All of defendant's obligations

18 are material, a single breach of this agreement is sufficient for the

19 USAO to declare a breach, and defendant shall not be deemed to have

20 cured a breach without the express agreement of the USAO in writing.

21 If the USAO declares this agreement breached, and the Court finds

22 such a breach to have occurred, then: (a) if defendant has previously

23 entered a guilty plea pursuant to this agreement, defendant will not

24 be able to withdraw the guilty plea, and (b) the USAO will be

25 relieved of all its obligations under this agreement.

26      26.  Following the Court's finding of a knowing breach of this

27 agreement by defendant, should the USAO choose to pursue any charge

28

that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

27.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.   While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

31.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____        12/21/2021
RUBEN ESCALANTE                         _____
Assistant United States Attorney        Date

_____        X  12/19/2021
FRANCISCO SANCHEZ MARTINEZ              _____
Defendant                               Date

_____        12/19/2021
MARIO RIVAS                             _____
Attorney for Defendant FRANCISCO        Date
SANCHEZ MARTINEZ


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  This agreement has been read to me in Spanish, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.

I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

x _____    x _12/19/2021_____

FRANCISCO SANCHEZ MARTINEZ            Date
Defendant


                    CERTIFICATION OF INTERPRETER

     I, ____Mario Rivas____, am fluent in the written and spoken English and Spanish languages.  I accurately translated this entire agreement from English into Spanish to defendant FRANCISCO SANCHEZ MARTINEZ on this date.

_____       _12/19/2021_____
INTERPRETER                           Date

21

1           <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2           I am FRANCISCO SANCHEZ MARTINEZ's attorney.  I have carefully

3  and thoroughly discussed every part of this agreement with my client.

4  Further, I have fully advised my client of his rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either prior to or at trial, of the sentencing factors

7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16

17 MARIO RIVAS                                          Date

18 Attorney for Defendant FRANCISCO
   SANCHEZ MARTINEZ

12/19/204

19

20

21

22

23

24

25

26

27

28